**THOMPSON TRADING LTD.**

v.

**ALLIED LYONS PLC, Allied Breweries Ltd., Allied Breweries Overseas Trading Ltd., Hiram Walker–Gooderham & Worts, Ltd. and Associated Importers, Inc.**

No. 88–0333 L.

United States District Court,
D. Rhode Island.

Jan. 12, 1989.

Charles P. Cavas, Hodosh, Spinella & Angelone, Providence, R.I., for Thompson Trading Ltd.

John Voorhees, Christopher Little, Tillinghast Collins & Graham, Providence, R.I., for Allied Lyons PLC and Hiram Walker–Gooderham & Worts, Ltd.

·Theodore Voorhees, Jr. and Dwight C. Smith and ʼEric Koenig, Covington & Burling, Washington, D.C., for Hiram Walker–Gooderham & Worts, Ltd. and Allied Lyons.

## OPINION AND ORDER

LAGUEUX, District Judge.

### INTRODUCTION

This matter is presently before the Court on the motion of Allied Lyons PLC ("Allied Lyons") and Hiram Walker–Gooderham & Worts, Ltd. ("Hiram Walker") to quash service of process and to dismiss. These two foreign corporate defendants seek dismissal on the ground that this Court lacks in personam jurisdiction over them.

In this Opinion the Court will decide two issues. The first involves the threshold question of what materials a district court should consider when ruling on a motion to dismiss on jurisdictional grounds. While a split in the circuits exists, this Court determines that a trial court has broad discretion to decide what extra-pleading material, if any, it should rely on in considering such a motion. The present jurisdictional question is inextricably intertwined with the merits of the dispute, and relevant information is likely in the control of the defendants. Therefore, this Court finds it appropriate to accept the allegations of plaintiff's complaint as true, and for the time being, to resolve the jurisdictional issue on that basis alone.

The second issue concerns the merits of defendants' motion to dismiss for lack of in personam jurisdiction. After considering the doctrines of general and specific jurisdiction, this Court finds that plaintiff's amended complaint states sufficient allega-

tions to demonstrate that Allied Lyons and Hiram Walker may be subject to this Court's specific in personam jurisdiction. Thus, defendants' motion must be denied.

### Background

As stated in plaintiff's amended complaint, the facts in this diversity action are as follows.

The instant suit involves several corporations with complicated subsidiary relationships. Therefore, it is appropriate at the outset to give a brief description of the parties presently before the Court. The plaintiff, Thompson Trading Ltd., ("Thompson") is a Rhode Island corporation in the business of importing foreign goods. On the defendants' side of the dispute are five corporations consisting of a parent and four subsidiaries. Allied Lyons, a British corporation, apparently directly owns two of the other defendants and apparently indirectly owns the remaining two. Allied Breweries, Ltd., ("Allied Breweries") a British corporation, apparently is a wholly owned subsidiary of Allied Lyons and apparently produces Double Diamond Pale Ale ("Double Diamond"), Allied Breweries Overseas Trading Ltd. ("ABOT"), a British corporation, apparently is a wholly owned subsidiary of Allied Breweries, and distributes Double Diamond. Hiram Walker, a Canadian corporation, is now a wholly owned subsidiary of Allied Lyons. Finally, Associated Importers, Inc. ("Associated Importers"), a Delaware corporation with its principal place of business in Michigan, is apparently a wholly owned subsidiary of Hiram Walker. The word "apparently" is used above because Thompson has failed to describe the corporate relationship between a number of the defendants. Instead, Thompson left it to this Court to infer the actual affiliations. It should be noted that at oral argument, defendants stated that at least one other intermediate subsidiary is involved in the above-described corporate structure, but this entity is not a party to this action, nor did plaintiff describe it in its amended complaint.

A history of the instant dispute is in order. On November 11, 1985 Thompson and ABOT entered into a distribution agreement concerning Double Diamond. Under this contract, ABOT granted Thompson the exclusive right to import Double Diamond into the United States and to distribute it. In the event Thompson desired to assign its rights under the contract, it would first have to obtain ABOT's consent. However, ABOT was obligated to consent to assignment so long as it did not consider the transfer to be prejudicial to its interest.

For two years Thompson expended large sums of money in an effort to promote Double Diamond, but its venture fizzled. Though Thompson's expenditures effervesced, its ale sales went flat. During this difficult period Thompson kept ABOT informed of its troubles. And so, it was with ABOT's blessing that in August of 1987, Thompson commenced to seek a third party to whom it could assign its importation and distribution rights. In fact, Thompson alleges that from August through November of 1987, ABOT actively encouraged Thompson's assignment efforts.

On November 4, 1987, Thompson reached a tentative agreement to assign its Double Diamond rights to the California importation and distribution company of Simon Levi Company Ltd. ("Simon Levi"). Two weeks later, ABOT representatives met with representatives of Simon Levi to discuss the proposed assignment. Then on November 24, 1987, Thompson and Simon Levi finalized and signed a letter of intent stating that Thompson would assign its rights to Simon Levi in consideration of $275,000. On November 26, 1987, ABOT sent Simon Levi a written outline of negotiated points of agreement from their previous meeting.

Contemporaneously with the Simon Levi negotiations, changes were brewing between Allied Lyons and Hiram Walker that would affect Thompson's assignment plans. In August, 1987, Allied Lyons owned a fifty-one percent interest in Hiram Walker. During that month, ABOT and Thompson discussed the possibility of assigning the Double Diamond rights to Hiram Walker; however, such discussions shortly ceased without ever achieving the level of formal

negotiation. Sometime during the late summer or early fall of 1987, Allied Lyons acquired the remaining shares of Hiram Walker and thereby became its sole owner.

On November 26, 1987, the same day that it sent Simon Levi a written outline of negotiated points, ABOT informed Simon Levi that Allied Lyons had acquired complete control of Hiram Walker. Therefore, ABOT asserted that Hiram Walker's subsidiary, Associated Importers, might be assigned the Double Diamond rights. Nonetheless, on December 9, 1987, ABOT forwarded a draft contract to Simon Levi. The same day, Simon Levi informed Thompson of Allied Lyons's Hiram Walker acquisition.

During the following weeks, ABOT established and missed several deadlines for issuing a final decision on the proposed Thompson assignment to Simon Levi. Finally, on January 27, 1988, ABOT and Associated Importers representatives met with Thompson officials to discuss the assignment of the Double Diamond distribution rights. ABOT representatives stated that they would not approve an assignment to Simon Levi, but instead wanted Hiram Walker to obtain the rights. In fact, Thompson alleges that ABOT threatened to remove Double Diamond from the United States market if Hiram Walker did not obtain the distribution rights.

On February 12, 1988, Thompson received an offer for the Double Diamond rights from Associated Importers. This proposal was for significantly less money than Simon Levi had offered. Thus, on March 2, Thompson sent a counter-offer to Associated Importers and ABOT. ABOT responded two weeks later by stating that Associated Importers' offer was not open to negotiation, and that if Thompson refused to accept the proposal, its Double Diamond distribution contract would be terminated. Thompson refused to accept ABOT's ultimatum. Therefore, on April 12, 1988, ABOT notified Thompson that their contract was cancelled.

On June 17, 1988, Thompson filed a six count amended complaint against Allied Lyons, Allied Breweries, ABOT, Hiram Walker, and Associated Importers. Thompson pleaded two causes of action against Allied Lyons and Hiram Walker— one sounding in tortious interference with a business relationship and the other claiming improper conspiratorial conduct.

In response, Allied Lyons and Hiram Walker filed a motion to quash service and to dismiss. These defendants argue that this Court lacks personal jurisdiction over them. Allied Lyons and Hiram Walker rely on Fed.R.Civ.P. 12(b)(1), (2) and (5). The remaining defendants answered Thompson's amended complaint and have not moved for dismissal.

In support of their motion, Allied Lyons and Hiram Walker filed a number of affidavits. These materials tend to show that Allied Lyons and Hiram Walker had nothing to do with the activity regarding Thompson's distribution contract and attempted assignment of its rights. The affidavits were filed to support the proposition that these "parents" had no involvement in their subsidiaries' decisions concerning Thompson. Rather than present evidence refuting defendants' affidavits, Thompson has chosen to rely solely on the allegations in its amended complaint. Thompson contends that these allegations must be accepted as true for the purposes of the instant motion to dismiss, and that the Court should not consider defendants' affidavits in making its ruling.

On October 12, 1988, this Court heard oral argument in this matter. It was taken under advisement, and it is now in order for decision.

## DISCUSSION

■ The first order of business is to sort through defendants' various contentions and to reach the heart of the issue presented by their motion. As noted, Allied Lyons and Hiram Walker cite Fed.R.Civ.P. 12(b)(1), (2) and (5) in support of their motion. Rule 12(b)(1) concerns lack of subject matter jurisdiction and Rule 12(b)(5) concerns insufficiency of service of process. No true dispute exists as to these two provisions. First, this Court clearly has subject matter jurisdiction over the instant

controversy arising out of a Rhode Island contract, concerning interference with assignment of Rhode Island contract rights, and affecting a Rhode Island plaintiff and party to the contract. Second, no showing of insufficiency of service of process has been made. Highlighting the unimportance of Rules 12(b)(1) and (5) to the present motion is the fact that defendants have not bothered to proffer any arguments, in their memorandum of law and at oral argument, in support of dismissal under these provisions.

The real issue presented by defendants' motion to dismiss is whether this Court has in personam jurisdiction over Allied Lyons and Hiram Walker. An initial determination that this Court must make is what material can be examined in ruling on defendants' motion to dismiss. Specifically, should the Court rely exclusively on the allegations pleaded in Thompson's complaint, or should the Court consider the affidavits filed by Allied Lyons and Hiram Walker in support of their motion. To follow the latter course would in effect convert defendants' motion to dismiss into a motion for summary judgment. Then the Court must examine the relevant long-arm statute and determine whether defendants possess sufficient minimum contacts with the State of Rhode Island to subject them to this forum's in personam jurisdiction. Such an analysis involves consideration of the concepts of general and specific jurisdiction and is fact-dependent.

### A. Rule 12(b)(2) and Extra–Pleading Material

■ Surprisingly, little authority exists that thoroughly discusses whether a court can rely on extra-pleading material that contradicts the allegations of a complaint, when the court rules on a motion to dismiss based on lack of jurisdiction. The language of the Federal Rules seems to indicate, and the Court of Appeals for the District of Columbia has held in *Haase v. Sessions*, 835 F.2d 902 (D.C.Cir.1987), that a district court may never convert Rule 12(b) motions, other than Rule 12(b)(6) motions, into motions for summary judgment in order to justify examination of extra-pleading information. However, other circuits have held that such material may be considered. While the First Circuit Court of Appeals has not addressed this conversion issue, it appears that in practice First Circuit district judges regularly consider affidavits and the like in ruling on motions to dismiss on jurisdictional grounds. This Court concludes that such an approach is sound. While the reasoning employed by the District of Columbia Circuit Court is initially appealing due to the language of Rule 12(b), that Court fails to examine the purpose underlying 12(b)'s relevant provision which was added by amendment in 1946. Therefore, the District of Columbia Court has understandably reached a questionable result.

The general rule, clearly accepted in the First Circuit, is that when a court makes a ruling on a motion to dismiss, it must accept the allegations of the complaint as true. *Fudge v. Penthouse Int'l Ltd.*, 840 F.2d 1012, 1014 (1st Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 65, 102 L.Ed.2d 42 (1988) ("Plaintiff's complaint alleged the following facts, which for the purposes of a motion to dismiss we must accept as true."); *Knight v. Mills*, 836 F.2d 659, 664 (1st Cir.1987) ("In reviewing [a motion to dismiss], the allegations of the complaint must be taken as true.").

To a large extent, however, the statement that a court must accept the complaint's allegations as true is nothing more than a platitude which is misleading in a number of situations. In the first place, there is no doubt that a Rule 12(b)(6) motion to dismiss may be converted into a motion for summary judgment if affidavits or other materials are submitted. Fed.R. Civ.P. 12(b) (hereinafter discussed). Thus, in that case the allegations in the complaint are not accepted as true. In fact a plaintiff may be forced to supply counter-affidavits in order to save his suit. Moreover, in many instances trial courts consider extra-pleading information without formally converting the Rule 12(b)(6) motion into a Rule 56 motion for summary judgment.

Still, one might argue that the proposition that complaint allegations are accepted

as true for purposes of motions to dismiss is still valid since, in the above-described situation, the motion is no longer one for dismissal but is then one for summary judgment. Yet, this contention falls apart when one examines the judicial treatment of other, non-Rule 12(b)(6) motions to dismiss. For example, in a number of decisions involving Rule 12(b)(2) motions to dismiss for lack of in personam jurisdiction, courts have issued rulings based not solely on the complaint's allegations, but on affidavits and other extra-pleading materials. *See Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir.1985); *Behagen v. Amateur Basketball Ass'n of U.S.*, 744 F.2d 731, 733 (10th Cir.1984), *cert. denied*, 471 U.S. 1010, 105 S.Ct. 1879, 85 L.Ed.2d 171 (1985); *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir.1981); *Neiman v. Rudolf Wolff & Co.*, 619 F.2d 1189, 1191 (7th Cir.1980), *cert. denied*, 449 U.S. 920, 101 S.Ct. 319, 66 L.Ed.2d 148 (1980); *Data Disc, Inc. v. Systems Technology Associates Inc.*, 557 F.2d 1280, 1285 (9th Cir.1977).

In fact, in ruling on motions to dismiss, courts only accept the allegations of the complaint as true if either (1) the movant has not challenged the allegations through affidavit or other extra-pleading material, or (2) the court refuses to consider such information on its own. The true general rule regarding the standard for considering a motion to dismiss is that a court accepts the complaint's allegations as true, but sometimes it does not. In practice, district courts exercise a great deal of discretion in the area of motions to dismiss.

If Allied Lyons and Hiram Walker had moved to dismiss and simply filed supporting legal memoranda there would be no question that this Court would accept the factual assertions of the amended complaint as true. However, the instant motion is complicated by the fact that defendants have filed supporting affidavits that tend to show that Allied Lyons and Hiram Walker were not involved in the alleged tortious conduct. On the other hand, Thompson takes the position that defendants' affidavits are irrelevant to their motion to dismiss since that motion must be decided based on the pleadings alone.

The first issue thus presented by Allied Lyons and Hiram Walker's motion is: When should a court consider matters outside the pleadings in deciding a motion to dismiss on jurisdictional grounds?

Rule 12(b) provides in part as follows: If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment.... Fed.R.Civ.P. 12(b). Therefore, as noted above, with a 12(b)(6) motion to dismiss, extra-pleading information may be used to challenge the allegations charged in the complaint.

In the instant matter, however, while defendants have filed supporting affidavits to challenge the complaint, they have brought their motion to dismiss pursuant to provisions of Rule 12(b) other than 12(b)(6). The question still remains whether a Rule 12(b)(2) motion to dismiss can be converted into a motion for summary judgment as can a 12(b)(6) motion. The majority of the Courts of Appeals that have considered this issue conclude that district courts may consider material outside the pleadings in ruling on 12(b)(2) motions to dismiss. *Thompson*, 755 F.2d at 1165; *Behagen*, 744 F.2d at 733; *Marine Midland Bank*, 664 F.2d at 904; *Neiman*, 619 F.2d at 1191; *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir.1980), *cert. denied*, 450 U.S. 981, 101 S.Ct. 1517, 67 L.Ed.2d 816 (1981); *Data Disc*, 557 F.2d at 1285. Unfortunately, these opinions provide very little discussion of the reasons for allowing extrinsic material. In fact, all the opinions issued after *Data Disc* simply cite that decision and rely on it without further explanation. Moreover, *Data Disc* merely concludes that a district court has great discretion to consider extra-pleading information in making Rule 12(b)(2) rulings without explaining why the general rule that a complaint's allegations must be accepted as true should be violated. *Data Disc*, 557 F.2d at 1285.

This Court suspects that motions to dismiss pursuant to Rules 12(b)(1)–(5) and (7) are often decided based on extra-pleading materials without any party considering whether the use of such information is appropriate at that stage. It appears that the opposing parties, perhaps in their ardor to join arms on the merits of the contested action, fail to consider if such motions must be decided on the pleadings alone. Therefore, the litigants rush headlong into factual disputes, firing affidavits back and forth, and courts base their motion to dismiss rulings on outside information without ever stopping to consider the propriety of their actions.

Lack of explanation not withstanding, the *Data Disc* line of cases clearly gives the district courts broad latitude to consider extrinsic material in ruling on motions to dismiss. For example, in *Marine Midland Bank* the Court of Appeals for the Second Circuit held:

> In deciding a pretrial motion to dismiss for lack of personal jurisdiction a district court has considerable procedural leeway. It may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion.

664 F.2d at 904 (citations omitted). Furthermore, though the general rule still survives, it is often eclipsed by the use of the above-described fact finding procedures. For example, the Court of Appeals for the Fifth Circuit has held: "On a motion to dismiss for lack of personal jurisdiction, the allegations of the complaint, except as controverted by the defendants' affidavits, must be taken as true." *Brown v. Flowers Indus., Inc.*, 688 F.2d 328, 333 (5th Cir.), *reh'g denied*, 691 F.2d 502 (1982), *cert. denied*, 460 U.S. 1023, 103 S.Ct. 1275, 75 L.Ed.2d 496 (1983).

To the contrary, the Court of Appeals for the District of Columbia has held that the conversion feature of Rule 12(b) applies only to 12(b)(6) motions, and that extra-pleading materials cannot be considered in 12(b)(1)–(5) and (7) determinations. In *Haase v. Sessions*, 835 F.2d 902, the District of Columbia Circuit Court confronted the question of when extraneous materials can be used in deciding a motion to dismiss.

At the trial court level, the *Haase* defendant filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) for lack of standing. *Id.* at 906. The Court of Appeals noted that "the defect of standing is a defect in subject matter jurisdiction." *Id.* Since the motion had been supported and opposed by affidavit, the district court, citing Rule 12(b), treated it as a motion for summary judgment and dismissed the plaintiff's declaratory judgment action for want of standing. *Id.* at 905.

Initially, the Court of Appeals affirmed the dismissal; however, on rehearing it vacated that portion of the lower court's decision that converted the motion to dismiss into a motion for summary judgment and granted dismissal. *Id.* at 903. The Appellate Court held that the trial court should have considered only the complaint's allegations in making its ruling. *Id.* at 906. While *Haase* involved a Rule 12(b)(1) motion to dismiss for lack of standing and the instant matter involves a Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction, the analysis of the non-convertibility of such motions into motions for summary judgment is the same.

In commencing its procedural discussion, the *Haase* Court noted that it found "it necessary to survey a surprisingly unchartered terrain involving the application of Rules 12(b) and 56 of the Federal Rules of Civil Procedure to standing doctrine." *Id.*

The Court of Appeals in *Haase* acknowledged that with a Rule 12(b)(6) motion, if either party submits additional materials outside the pleadings, then a district court can treat the motion as one for summary judgment. *Id.* at 905. Yet, the Court distinguished Rule 12(b)(6) motions from other Rule 12(b) motions as follows:

> It seems clear, however, that the plain language of Rule 12(b) permits *only* a 12(b)(6) motion to be converted into a motion for summary judgment. The last sentence of Rule 12(b), by requiring "a motion asserting the defense numbered

(6)" to be treated as one for summary judgment if extra-pleading material is introduced, precludes by negative implication the possibility that motions filed under 12(b)(1)–(5) or (7) may be so treated....

As the applicable subsection is therefore 12(b)(1), not 12(b)(6), the conversion feature does not apply, and the case procedurally should have been limited ... to a review of [plaintiff's] allegations....

*Id.* at 905–06.

From a textual standpoint the reasoning of *Haase* seems compelling; however, the *Haase* Court makes two mistakes. First, it fails to consider the historical framework surrounding that portion of Rule 12(b) which it relies on and thereby misinterprets the rule. Second, the Court accepts the axiom that allegations of a complaint are always considered to be true for purposes of a motion to dismiss.

The last sentence of Rule 12(b), which requires "a motion asserting the defense numbered (6)" to be treated as a motion for summary judgment if extra-pleading material is introduced, was added to Rule 12 by amendment in 1946. In its notes to the 1946 Amendment, the Advisory Committee makes clear that this addition was primarily intended to codify a common law procedure that a number of federal courts were already following. The Committee wrote:

> The addition at the end of subdivision (b) makes it clear that on a motion under Rule 12(b)(6) extraneous material may not be considered if the court excludes it, but that if the court does not exclude such material the motion shall be treated as a motion for summary judgment and disposed of as provided in Rule 56. ... As the courts are already dealing with cases in this way, the effect of this amendment is really only to define the practice carefully and apply the requirements of the summary judgment rule in the disposition of the motion.

Notes of Advisory Committee on Rules, 1946 Amendment to Fed.R.Civ.P. 12(b).

It was not the intent of the enactors to dictate to the courts the proper procedures under 12(b), but rather to follow the judiciary's lead in handling motions to dismiss. Moreover, there is no indication that the last sentence of 12(b) was intended to, by negative implication or otherwise, prohibit federal courts from considering extra-pleading material in cases where they found it appropriate to do so. If the drafters had intended to limit the courts' discretion in dealing with motions to dismiss, they certainly would not have been so ambiguous. In particular, the Amendment's drafters would not have limited the courts' options through an enactment designed only to follow an existing, judicially created practice.

As previously noted, the often repeated rule that the allegations of a complaint are accepted as true for motion to dismiss purposes is not followed in many cases. Moreover, the rule itself is a judicially created doctrine, and not a statutory mandate. *Data Disc*, 557 F.2d at 1285. As the United States Supreme Court noted in a 1939 decision: "As there is no statutory direction for procedure upon an issue of jurisdiction, the mode of its determination is left to the trial court." *Gibbs v. Buck*, 307 U.S. 66, 71–72, 59 S.Ct. 725, 728–29, 83 L.Ed. 1111. In short, the general rule that a complaint's allegations are to be accepted as true for the purposes of a motion to dismiss was judicially created. As such, it may also be judicially abrogated in situations where the courts find it appropriate to do so.

The instant matter is not the type of situation where abrogation of the general rule is appropriate. Here, the dispute over in personam jurisdiction revolves around determinations that go to the very merits of the case itself. As is discussed hereinafter, the only viable basis for subjecting Allied Lyons and Hiram Walker to the jurisdiction of this Court would be if Thompson can prove that these defendants committed a tort in Rhode Island or one that affected Rhode Island. Here, the jurisdictional basis is not only intertwined with the merits of the case, it goes to the very heart of Thompson's complaint against Allied Lyons and Hiram Walker. In such a situation, "it is preferable that this determina-

tion be made at trial." *Data Disc,* 557 F.2d at 1285–86 n. 2. Furthermore, it is inappropriate to break with the general rule here because the movant is the party having control over any relevant evidence of tortious conduct that may exist. Without discovery, Thompson's task of presenting evidence of defendants' contacts with this forum is very onerous. Therefore, its allegations must now be accepted as true, and a decision on the jurisdictional issue must await trial. Of course, if appropriate, such a determination may also be reached through the summary judgment procedure after discovery is completed.

For these reasons, this Court now accepts as true the allegations of Thompson's amended complaint for purposes of the instant motion to dismiss. However, this Court wishes to stress that if it were to accept defendants' affidavits, without being offered evidence to the contrary by Thompson, it would most certainly find in defendants' favor. The burden of establishing in personam jurisdiction lies with the plaintiff. Therefore, Thompson must present substantial evidence of tortious conduct by Allied Lyons and Hiram Walker if it hopes to maintain its action against those defendants.

### B. *In Personam Jurisdiction*

Turning now to the merits of defendants' motion to dismiss for lack of in personam jurisdiction, this Court finds that the amended complaint is sufficient to survive Allied Lyons and Hiram Walker's motion. Specifically, Thompson's allegations make out a prima facie showing that these defendants are subject to this Court's jurisdiction. At the outset, two important distinctions must be stressed. The first is that general jurisdiction and specific jurisdiction are two separate doctrines which establish two different analytical frameworks. Second, contract actions and tort actions involve different minimum contacts concepts under in personam jurisdictional analysis. Unfortunately, the lines between general and specific jurisdiction, and tort and contract jurisdiction are often blurred. Yet, it is wrong to transpose rationales from one analytical schema onto another.

This Court recently discussed the difference between general in personam jurisdiction and specific in personam jurisdiction in *Petroleum Serv. Holdings v. Mobil Exploration & Production,* 680 F.Supp. 492, 495 (D.R.I.1988). Therein, this Court stated as follows:

In *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n. 8 [104 S.Ct. 1868, 1872 n. 8, 80 L.Ed.2d 404] (1984), the Supreme Court indicated that a federal district court exercises specific jurisdiction over a defendant in a suit "arising out of or related to the defendant's contacts with the forum." Conversely, where plaintiff's claims do not arise out of or are not directly related to defendant's contacts with the forum state, a court exercises general jurisdiction. *Id.* 466 U.S. at 414 n. 9 [104 S.Ct. at 1872 n. 9].

In brief, the concept of general jurisdiction calls for an examination into whether a defendant has purposeful and systematic contacts with a forum state so as to justify the exercise of in personam jurisdiction over him in *any* matter. If these contacts achieve a certain minimum threshold, then that party is subject to the jurisdiction of the forum's court regardless of whether the actions giving rise to the suit are related to the contacts that give the court jurisdiction over the defendant. In its simplest form, a court always has personal jurisdiction over one of its domiciliaries, even in suits where the cause of action occurred out of state.

Specific jurisdiction, on the other hand, is extremely dependent on the interrelationship that the contacts giving rise to in personam jurisdiction have with the activities giving rise to the cause of action. Therefore, the minimum contact threshold for the exercise of specific in personam jurisdiction can be quite low—one contact with the forum is often sufficient; however, the cause of action must arise out of that contact. *Dupont Tire Serv. v. N. Stonington Auto–Truck Pl.,* 659 F.Supp. 861 (D.R.I.1987).

The specific jurisdiction doctrines used in the contract and tort settings must not be confused. For example, one entering into a contract in a forum is said to *avail* himself " 'of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws,' " since it is the laws of that forum which support and protect his contract rights. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958)). This is often referred to as the "purposeful availment" requirement. *Id.* However, one committing a tort in a forum does not purposefully avail himself of the benefits and protections of its laws, since such laws are not supporting and protecting his illegal activities. To the contrary, the forum's laws are likely designed to interfere with his tortious conduct. Therefore, it is nonsensical to say that one committing a tort in a forum has availed himself of that jurisdiction's laws. The purposeful availment concept, when used in the area of specific jurisdiction, is relevant only where the cause of action sounds in contract. It should not be interjected into tort actions where specific jurisdiction is claimed.

The task presently facing the Court is to determine if the allegations in Thompson's amended complaint, accepted as true, justify the exercise of in personam jurisdiction over Allied Lyons and Hiram Walker. As this Court recently noted:

> Whether a federal court has personal jurisdiction over a defendant depends upon two criteria: (1) whether the mandates of the forum state's long-arm statute have been satisfied, and (2) whether the defendant has been hailed into the particular court in accordance with the

due process clause of the Fourteenth Amendment to the United States Constitution. Since the Supreme Court of Rhode Island has held that Rhode Island's long-arm statute reaches to the full breadth of the Fourteenth Amendment, *Conn. v. ITT Aetna Finance Co.*, 105 R.I. 397, 402, 252 A.2d 184, 186 (1969), one need only examine the foundation for the second criterion listed above.

*Levinger v. Matthew Stuart & Co., Inc.*, 676 F.Supp. 437, 439 (D.R.I.1988). Rhode Island's long-arm statute is codified as G.L. § 9–5–33.[1]

The United States Supreme Court has sought to define the Fourteenth Amendment boundaries of in personam jurisdiction in a long line of decisions. *See generally* J. Friedenthal, M. Kane, and A. Miller, *Civil Procedure* §§ 3.10–3.11 (1985). In the 1945 decision of *International Shoe Company v. State of Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, the Supreme Court announced what continues to be the basic standard for regulating the exercise of in personam jurisdiction over nonresidents. The Court held:

> [D]ue process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."

*Id.* at 316, 66 S.Ct. at 158 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)).

The Court went on to describe four rules for use in determining whether the requisite minimum contacts have been shown. First, when the activities of a foreign cor-

---

1. Rhode Island G.L. § 9–5–33, "Jurisdiction over foreign corporations and over nonresident individuals, partnerships, or associations," provides in part:

   Every foreign corporation ... that shall have the necessary minimum contacts with the state of Rhode Island, shall be subject to the jurisdiction of the state of Rhode Island, and the courts of this state shall hold such foreign corporations ... amenable to suit in Rhode Island in every case not contrary to the provisions of the constitution or laws of the United States.

   In its amended complaint, Thompson claims that R.I.G.L. § 9–5–32 is the relevant jurisdictional provision. § 9–5–32 concerns notice to nonresidents who fail to file a power of attorney in Rhode Island for service of process purposes. This citation by Thompson appears to be an oversight as § 9–5–33 is the relevant statute.

poration within the forum are "continuous and systematic" and "give rise to the liabilities sued upon," there is no question that jurisdiction exists. *Id.* 326 U.S. at 317, 66 S.Ct. at 158. Second, sporadic or casual activities of a corporate agent or "isolated items of activities in a state in the corporation's behalf are not enough to subject it to suit on causes of action unconnected with the activities there." *Id.* Third, a foreign corporation's activities may be so continuous, systematic and substantial as to subject the corporation to the forum's jurisdiction even "on causes of action arising from dealings entirely distinct from those activities." *Id.* at 318, 66 S.Ct. at 159; *see also Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 415–416, 104 S.Ct. 1868, 1872–73, 80 L.Ed.2d 404 (1984) (Since claims against defendant did not "arise out of" defendant's activities within Texas, the Court "must explore the nature of [defendant's] contacts with ... Texas to determine whether they constitute the kind of continuous and systematic general business contacts" required for jurisdiction.). Fourth, sporadic activity, even a single act, may be sufficient to subject a corporation to the forum's jurisdiction in suits arising out of that activity. *International Shoe,* 326 U.S. at 318, 66 S.Ct. at 159.

Based on the standard ennunciated in *International Shoe,* "a minimum contacts analysis begins with two questions: first, were the defendant's activities in the forum continuous and systematic or only sporadic and casual; second, is the cause of action sued upon related or unrelated to the defendant's conduct in the forum." *Civil Procedure* at 125. The first question primarily goes to the issue of general jurisdiction, while the latter concerns specific jurisdiction.

■ Turning first to the issue of continuous and systematic conduct, Thompson has failed to demonstrate that Allied Lyons and Hiram Walker's activities in Rhode Island rise to the level necessary to subject them to this Court's general in personam jurisdiction. Thompson has not alleged that Allied Lyons and Hiram Walker themselves carry on any business activities, let alone

continuous and systematic activities, within the state of Rhode Island. Instead, Thompson, in its memorandum opposing defendants' motion to dismiss, has argued that Allied Lyons and Hiram Walker have established sufficient minimum contacts with this forum for general jurisdiction purposes through the activities of their subsidiaries. Thompson in essence has tried to visit this forum's jurisdiction over the subsidiaries upon the parent corporations by essentially piercing the corporate veil. In furtherance of this endeavor, Thompson has made much of the fact that the parents wholly own their subsidiaries and that the parents and subsidiaries share some common directors.

Thompson has failed to allege sufficient facts to justify piercing the corporate veil and treating Allied Lyons and ABOT as one for jurisdictional purposes; nor has it alleged sufficient facts to justify treating Hiram Walker and Associated Importers as one for jurisdictional purposes. The United States Supreme Court has clearly stated that the presence of a "subsidiary [in a state] does not necessarily subject the parent corporation to the jurisdiction" of that state. *Cannon Mfg. Co. v. Cudahy Co.,* 267 U.S. 333, 336, 45 S.Ct. 250, 251, 69 L.Ed. 634 (1925). The Court held that in the absence of a showing that the parent subsidiary relationship is "pure fiction," even if it is "merely formal," jurisdiction over the subsidiary does not create jurisdiction over the parent. *Id.* at 337, 45 S.Ct. at 251.

In 1983, the Fifth Circuit Court of Appeals followed the *Cannon* rule, holding as follows:

Generally, a foreign parent corporation is not subject to the jurisdiction of a forum state merely because its subsidiary is present or doing business there; the mere existence of a parent-subsidiary relationship is not sufficient to warrant the assertion of jurisdiction over the foreign parent. It has long been recognized, however, that in some circumstances a close relationship between a parent and its subsidiary may justify a finding that the parent "does business"

in a jurisdiction through the local activities of its subsidiaries. The rationale for such an exercise of jurisdiction is that the parent corporation exerts such domination and control over its subsidiary "that they do not in reality constitute separate and distinct corporate entities but are one and the same corporation for purposes of jurisdiction."

*Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1159 (5th Cir.1983) (citations omitted). Here Thompson rests on its allegations that Allied Lyons and Hiram Walker wholly own subsidiaries doing business in Rhode Island and have directors in common with these companies. This is not enough.

In *Miller v. Honda Motor Co., Ltd.*, 779 F.2d 769 (1st Cir.1985), the Court of Appeals for the First Circuit held that jurisdiction over a Japanese parent corporation did not exist even though a wholly-owned subsidiary did business in the forum state and even though common membership on the board of directors existed. The Court of Appeals noted that "there is nothing fraudulent or against public policy in limiting one's liability by the appropriate use of corporate insulation." *Id.* at 773. *Honda* is controlling in the instant matter. Therefore, Thompson has failed to allege facts sufficient to justify piercing the corporate veil in the present situation, and it has not established that Allied Lyons and Hiram Walker are subject to this forum's general in personam jurisdiction.

■ Turning now to the question of specific in personam jurisdiction, Thompson alleges that Allied Lyons and Hiram Walker conspired to and did in fact tortiously interfere with its business relationship. In essence, Thompson claims that these defendants committed a tort in the state of Rhode Island by interfering with rights arising under a Rhode Island contract, and by wrongfully preventing the assignment of contract rights by a Rhode Island assignor. Thus, Thompson claims that defendants intentionally interfered with its business relationships.

The Due Process clause of the Fourteenth Amendment requires that individuals have " 'fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign.' " *Burger King*, 471 U.S. at 472, 105 S.Ct. at 2182 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 218, 97 S.Ct. 2569, 2587, 53 L.Ed.2d 683 (1977) (Stevens, J., concurring)). In this regard, the Supreme Court has held:

Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this "fair warning" requirement is satisfied if the defendant has "purposefully directed" his activities at residents of the forum, *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 [104 S.Ct. 1473, 1478, 79 L.Ed.2d 790] (1984), and the litigation results from alleged injuries that "arise out of or relate to" those activities, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S., 408, 414 [104 S.Ct. 1868, 1872, 80 L.Ed.2d 404] (1984).

*Id.* 471 U.S. at 472–73, 105 S.Ct. at 2182–83.

This Court need not consider the somewhat metaphysical question of where the tort of wrongful interference with a business relationship occurs. Whether Allied Lyons and Hiram Walker actually committed an act in this state, such as placing a phone call to Rhode Island, or whether they merely acted through third parties is not important. Because defendants allegedly tortiously interfered with a Rhode Island corporation's business rights arising out of a Rhode Island contract, it was clearly forseeable that such activity would have a direct effect in Rhode Island. Therefore, it is fair for this Court to exercise jurisdiction over Allied Lyons and Hiram Walker because their alleged tortious conduct constitutes the requisite minimum contact for the exercise of specific in personam jurisdiction in the instant matter.

## CONCLUSION

This Court has broad discretion to determine what, if any, extra-pleading material should be considered in ruling on defendants' motion to dismiss. Due to the fact that the present dispute over jurisdiction, in the final analysis, depends upon whether or not Allied Lyons and Hiram Walker com-

mitted or conspired to commit the alleged tort, and also because most of the relevant evidence is likely in defendants' control, it is appropriate to consider *only* the allegations contained in Thompson's amended complaint in ruling on defendants' motion.

In its amended complaint, Thompson has pleaded allegations which, if true, demonstrate that Allied Lyons and Hiram Walker are subject to this forum's jurisdiction. Specifically, these defendants may have established sufficient minimum contacts with Rhode Island through their alleged tortious conduct to justify the exercise of this Court's specific in personam jurisdiction over them in the instant matter. Therefore, defendants' motion is denied.

IT IS SO ORDERED.