**NORTHEASTERN LAND SERVICES, LTD.**

v.

**Steven SCHULKE.**

**C.A. No. 97–328–T.**

United States District Court,
D. Rhode Island.

Nov. 13, 1997.

Jordan Price, William Grimm, Hinckley, Allen & Snyder, Providence, RI, for Plaintiff.

Richard Welch, Tillinghast, Licht and Semonoff, Providence, RI, for Defendant.

### ORDER

TORRES, District Judge.

The recommendation contained in the Report of Magistrate Judge Lovegreen dated August 21, 1997, is hereby accepted.

### REPORT AND RECOMMENDATION

LOVEGREEN, United States Magistrate Judge.

Northeastern Land Services, Ltd. ("NLS"), a Rhode Island corporation, filed this diversity action against Steven Schulke, a citizen of Texas, alleging misappropriation of trade secrets, tortious interference with advantageous business relations, breach of fiduciary duty, intentional interference with contractual relations, usurpation of corporate opportunity, and violation of Rhode Island's Uniform Trade Secrets Act. Schulke now moves to dismiss for lack of personal jurisdiction. Fed.R.Civ.P. 12(b)(2). This matter has been referred to me for preliminary review, findings, and recommended disposition. 28 U.S.C. § 636(b)(1)(B); Local Rule of Court 32(c). A hearing was held on July 31, 1997. After weighing the arguments of counsel and the memoranda submitted, I recommend that Schulke's motion be denied.

Civil Rule 12(b)(2) provides for dismissal of an action against an individual over whom the court cannot exercise personal jurisdiction. The burden rests with the plaintiff to establish facts sufficient to withstand a chal-

lenge to personal jurisdiction. *Sawtelle v. Farrell,* 70 F.3d 1381, 1387 (1st Cir.1995). In cases such as this one, where no evidentiary hearing is held, the plaintiff must make a *prima facie* showing of personal jurisdiction through affirmative proof beyond the pleadings. *Boit v. Gar–Tec Prods., Inc.,* 967 F.2d 671, 675 (1st Cir.1992). To this end, NLS relies upon the affidavits of Renee Reilly, Jeffery Deuink, and Jessie Green. For this inquiry, the court does not assume the role of fact finder, but instead "accepts properly supported proffers of evidence by a plaintiff as true" and makes its ruling as a matter of law. *Id.*

### Background

NLS operates in the land service contract industry where it provides customers in the telecommunications industry with solutions to their individual problems. Schulke was hired to work as a senior manager at NLS' offices in Providence, Rhode Island in November 1993. On January 27, 1995, Deuink and Schulke entered into a Shareholder's Agreement in which Deuink became the majority shareholder, holding two-thirds of NLS' stock, while Schulke became the minority shareholder, holding the remaining one-third. On the same day, Schulke became a director and vice president of NLS, while Deuink became a director, president and treasurer. Schulke remained a director and vice president of NLS until his termination on April 28, 1997.

The thrust of the complaint, supported by the affidavits of Green (NLS' director of project management), Reilly (NLS' chief financial officer), and Deuink, is that Schulke, on company time and with company resources, began laying the ground work for establishing a competing business in the telecommunications industry. Compl. at ¶ 17. NLS alleges that Schulke utilized NLS' trade secrets and confidential information and tortiously interfered with contractual relations with current and prospective customers while serving as a director and vice president of NLS. NLS also claims that Schulke breached a fiduciary relationship with NLS when he solicited NLS employees and customers in order to start his new business venture. The

complaint also alleges that Schulke violated the Shareholders Agreement and is now an "ineligible shareholder" and must redeem his shares of stock from NLS for the purchase price. *Id.* at ¶ 67.

According to NLS, Schulke ran NLS' telecommunications division and was responsible for preparing and presenting proposals to the telecommunications industry, as well as for marketing, developing, and advertising present and future business. Schulke performed many of these activities in Rhode Island. For instance, Schulke often placed advertisements in the *Providence Journal–Bulletin.* NLS also claims that Schulke requested that prospective employees forward him their résumé at NLS' corporate offices in Rhode Island. Schulke would also interview and hire applicants in Rhode Island for work on Rhode Island projects. Schulke also regularly supervised weekly management meetings at NLS' offices, and when he could not attend he would participate via conference call. According to NLS, Schulke attended board meetings in Rhode Island during his tenure as a director on April 11, 1995, and on January 15, May 14, September 11 and November 19, 1996. Between 1995 and 1997, Schulke made more than twenty-five visits to Rhode Island and spent in excess of sixty-three days in this forum. In early 1996, Schulke had an office assigned to him in Rhode Island. NLS also purchased and furnished an apartment for him in Rhode Island.

To the foregoing, Schulke simply responds that his last trip to Rhode Island involved his attendance at a NLS Christmas party in December 1996. He claims that since early 1996 all his clients and contacts for NLS have been focused in Texas. However, Schulke does not dispute the facts set forth by NLS in its complaint, memoranda, and accompanying affidavits regarding his activities in Rhode Island on behalf of NLS.

### Waiver of Personal Jurisdiction

 As an initial matter, NLS claims that Schulke waived the right to challenge this court's personal jurisdiction when, prior to removal, he appeared, through counsel, on April 29, 1997 in Rhode Island Superior

Court to oppose NLS' motion for a temporary restraining order. This argument is without merit. "Lack of personal jurisdiction is a privileged defense that can be waived 'by failure [to] assert [it] seasonably, by formal submission in a cause, or by submission through conduct.'" *Marcial Ucin, S.A. v. S.S. Galicia,* 723 F.2d 994, 996 (1st Cir.1983) (quoting *Neirbo Co. v. Bethlehem Shipbuilding Corp.,* 308 U.S. 165, 168, 60 S.Ct. 153, 155, 84 L.Ed. 167 (1939)). Civil Rule 12(h)(1) dictates that the defense will be waived if not made by motion or included in the responsive pleading. Fed.R.Civ.P. 12(h)(1); *Glater v. Eli Lilly & Co.,* 712 F.2d 735, 737 (1st Cir. 1983) (holding defense not waived). However, defendants do not waive the defense of personal jurisdiction if it was not available at the time they made their first defensive move. *Id.*

In this case, Schulke has yet to file his responsive pleading. Moreover, it is undisputed that Schulke received NLS' motion for a temporary restraining order and preliminary injunction on April 28, 1997 by facsimile. The hearing was held the next day. NLS sent Schulke the verified complaint the day after the hearing. Schulke could not have challenged personal jurisdiction at the hearing because NLS' claims were unknown to him at that time. Accordingly, Schulke's ability to attack this court's jurisdiction over his person was not waived.

### *In Personam Jurisdiction*

■ Principles of due process limit this court's exercise of jurisdiction over nonresidents haled into this forum as defendants. In determining whether a federal court in a diversity action possesses personal jurisdiction, the forum state's long-arm statute controls. *Sawtelle,* 70 F.3d at 1387. Rhode Island's long-arm statute [1] reaches to the full extent permitted under the United States Constitution, see *Almeida v. Radovsky,* 506 A.2d 1373, 1374 (R.I.1986); therefore, the question here is whether this court's exercise

of jurisdiction over Schulke comports with the due process clause of the· Fourteenth Amendment. *Eastland Bank v. Massbank For Savings,* 749 F.Supp. 433, 436 (D.R.I. 1990); *Levinger v. Matthew Stuart & ·Co., Inc.,* 676 F.Supp. ·437, 439 (D.R.I.1988).

Due·process demands minimum contacts between a nonresident defendant and the forum such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Personal jurisdiction may be either specific or general. Schulke petitions the court under both theories.

### A. Specific *In Personam* Jurisdiction.

■ The First Circuit follows a three-pronged test to determine whether sufficient contacts exist to allow this court to exercise specific personal jurisdiction.

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's forum-state contacts must represent a purposeful availment of the privilege of conducting .activities in the forum state, thereby invoking the benefits and protections of that state's laws and making .the defendant's involuntary presence before the state's court foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

*Nowak v. Tak How Investments, Ltd.,* 94 F.3d 708, 712–13 (1st Cir,1996) (quoting *Pritzker v. Yari,* 42 F.3d 53, 60–61 (1st Cir. 1994)).

■ Under the first prong, NLS must establish relatedness—i.e., that its claims arise out of, or relate to, Schulke's Rhode Island activities. *Ticketmaster–New York, Inc. v. Alioto,* 26 F.3d 201, 206 (1st Cir.1994). Here, the focus is on the causal nexus between Schulke's forum-based contacts and

---

1. The Rhode Island long-arm statute provides, in part:

 [E]very individual not a resident of this state ... that shall have the necessary minimum contacts with the state of Rhode Island, shall be subject to the jurisdiction of the state of Rhode Island, and the courts of this state shall hold ... such nonresident individuals ... amenable to suit in Rhode Island in every case not contrary to the provisions of the constitution or laws of the United States. R.I. Gen. Laws § 9–5–33(a) (1985).

the harm underlying NLS' complaint. While the relatedness test involves a relatively flexible standard, it is "not met merely because a plaintiff's cause of action arose out of the general relationship between the parties; rather, the action must directly arise out of the specific contacts between the defendant and the forum state." *Sawtelle*, 70 F.3d at 1389. It is clear that NLS' claims arose directly from Schulke's commercial contacts with Rhode Island. In 1996, Schulke spent over sixty days in Rhode Island; he supervised weekly management meetings in Rhode Island; he attended numerous NLS board meetings as a director and vice president. NLS' claims for breach of fiduciary duty, misappropriation, and tortious interference with advantageous business relations arose directly from these contacts. For example, the breach of fiduciary duty, if any, occurred when, in Rhode Island, Schulke allegedly solicited NLS' employees and customers and diverted NLS' resources and confidential information for his own business operation. The misappropriation, if any, occurred when, in Rhode Island, Schulke allegedly converted trade secrets he acquired through his employment with NLS. The tortious interference with business relations, if any, occurred when Schulke allegedly contacted Rhode Island employees and customers of NLS in order to solicit business for his own venture. Therefore, I find that NLS' claims arose directly from Schulke's forum-state activities.

■ The purposeful availment requirement exists to insulate the out-of-forum defendant from amenability to suit in a forum state with which he shares only "random, isolated, or fortuitous" contacts. *Sawtelle*, 70 F.3d at 1391 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984)). The standard contact demonstrating purposeful availment is that which is both voluntary and which creates a reasonable foreseeability that the defendant will be haled into the forum state's courts. *Nowak*, 94 F.3d at 716. In the context of contract-based contacts, a party to an in-forum contract is said to avail himself " 'of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws,' " since it is the law of that forum that supports

and protects his contract rights. *Thompson Trading, Ltd. v. Allied Lyons, PLC*, 123 F.R.D. 417, 426 (D.R.I.1989) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528 (1985)). By the same token, in "reach[ing] out beyond one state and creat[ing] continuing relationships and obligations with the citizens of another state" one subjects oneself to the jurisdiction of the other state for the consequences of one's activities. *Burger King*, 471 U.S. at 473, 105 S.Ct. at 2182–83 (quoting *Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 647, 70 S.Ct. 927, 929, 94 L.Ed. 1154 (1950)). Nonetheless, it is clear that merely entering into a contract with a forum state resident, alone, is insufficient to establish the purposeful availment of that forum's jurisdiction. *Ganis Corp. of California v. Jackson*, 822 F.2d 194, 197 (1st Cir.1987). Instead the Supreme Court requires that the lower courts apply a "contract-plus" test, *Burger King*, 471 U.S. at 479, 105 S.Ct. at 2185–86, to evaluate the parties' prior negotiations, the terms of the contract itself, along with the parties' actual and contemplated course of dealing in order to determine the degree and types of contacts, aside from the contract itself, which the defendant had with the forum state. To satisfy the purposeful availment requirement, this inquiry must evince a voluntary decision by the defendant to interject himself into the local economy as a market participant. *Bond Leather Co., Inc. v. Q.T. Shoe Mfg. Co., Inc.*, 764 F.2d 928, 933 (1st Cir.1985).

An application of these factors to Schulke's conduct reveals sufficient evidence of his purposeful availment of this forum. The Shareholders Agreement between Schulke and Deuink was negotiated in Rhode Island. Schulke began his employment for NLS in Rhode Island, and it is obvious that a breach of his fiduciary relationship would effect the corporation's headquarters in Rhode Island. As a director and vice president of NLS, Schulke owed the corporation a duty of good faith, and any breach of such duty would adversely effect the nerve center of the corporation here in Rhode Island. Clearly, Schulke's activities fall within that category of conduct that should have alerted him to

potential amenability to suit in this forum. Consequently, I find that Schulke purposefully availed himself of the benefit of doing business in Rhode Island.

■ Schulke's alleged misappropriation, intentional interference with contractual relations, and tortious interference with advantageous business relations also satisfies the requisite minimum contacts. This district has previously recognized the limited relevance of the conventional purposeful availment inquiry in tort actions. *See Thompson Trading,* 123 F.R.D. at 426 ("one committing a tort in a forum does not purposefully avail himself of the benefits and protections of its laws, since such laws are not supporting and protecting his illegal activities"). Instead, due process requires that a defendant have "fair warning" that his activity may render him amenable to suit in a foreign forum. *Burger King,* 471 U.S. at 472, 105 S.Ct. at 2181–82. The "fair warning" requirement is met if the defendant has "purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Id.* at 472–73, 105 S.Ct. at 2182 (internal citations and quotations omitted); *Thompson Trading,* 123 F.R.D. at 428. Indeed, the general rule in this circuit holds that where a defendant's out-of-forum actions intentionally cause tortious injury in the forum, jurisdiction will obtain for claims arising from that injury. *Hugel v. McNell,* 886 F.2d 1, 4 (1st Cir.1989) (discussing *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984)); *Anderson v. Century Prods., Co.,* 943 F.Supp. 137, 143 (D.N.H. 1996).

In the case at bar, it is clear that Schulke's alleged conduct fits within this rule. Schulke's multiple visits to Rhode Island, during which time he is said to have laid the foundation for misappropriation, intentional interference with contractual relations, and tortious interference with advantageous business relations, gave rise to NLS' claimed injuries. Furthermore, the consequences of such misdoings, even if effected exclusively from within Texas, would necessarily effect this forum. These considerations allow Schulke to be haled into this forum to answer for the tortious injury flowing from such conduct.

Under the third prong of the *Nowak* test, once minimum contacts have been established, it is necessary to assess whether the exercise of personal jurisdiction would be consistent with the demands of "fair play and substantial justice." *Burger King,* 471 U.S. at 476, 105 S.Ct. at 2184 (quoting *Int'l Shoe Co.,* 326 U.S. at 320, 66 S.Ct. at 160). Under this inquiry, "where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King,* 471 U.S. at 477, 105 S.Ct. at 2184–85. Such considerations include: (1) the burden on the defendant, (2) the interests of the forum state, (3) plaintiff's interest in obtaining relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Asahi Metal Indus. Co., Ltd. v. Superior Court of California,* 480 U.S. 102, 113, 107 S.Ct. 1026, 1032–33, 94 L.Ed.2d 92 (1987).

The balance of these factors favor jurisdiction in this case. On the one hand, the fact that Schulke resides so far from Rhode Island weighs against the reasonableness of jurisdiction because the travel required to defend this suit could impose a significant burden. On the other hand, Rhode Island has an obvious interest in providing a civil forum to litigate alleged encroachments upon the property and trade secrets of Rhode Island corporations. As to the third factor, NLS is strongly interested in protecting its trade secrets and confidential business information. The fourth and fifth factors do not appear to sway the inquiry in either direction. The distance which Schulke must travel to defend this suit is not enough to render the exercise of jurisdiction unreasonable. Therefore, consonant with the due process clause of the Fourteenth Amendment to the United States Constitution, I find that Schulke is properly subject to the specific *in personam* jurisdiction of this court.

## 60

### B. General *In Personam* Jurisdiction.

 "General jurisdiction exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state." *United Elec., Radio and Machine Workers of America v. 163 Pleasant Street Corp.*, 960 F.2d 1080, 1088 (1st Cir.1992). Once obtained, general jurisdiction permits the defendant to be sued in the forum on *any* claim. It is well-settled that the exercise of general jurisdiction requires more interaction on the part of the defendant with the forum than those minimum contacts needed to support specific jurisdiction.

As evidence of Schulke's continuous and systematic activity in Rhode Island, NLS relies on the facts that the Shareholders Agreement was negotiated here and that Schulke is a one-third shareholder. These two facts alone hardly amount to continuous and systematic activity in Rhode Island. The record is unclear as to how many times Schulke appeared in Rhode Island to negotiate the Shareholders Agreement, but even assuming, *arguendo*, that he spent several days here during the negotiating process, this fact is insufficient to trigger general jurisdiction. The same may be said of his status as a one-third shareholder. General *in personam* jurisdiction is lacking in this instance.

### *Conclusion*

For the reasons stated, I recommend that defendant's motion to dismiss for lack of personal jurisdiction be denied. Any objection to this Report and Recommendation must be specific and must be filed with the clerk of court within ten (10) days of its receipt. Fed.R.Civ.P. 72(b); Local Rule of Court 32(c). Failure to file objections in a timely manner constitutes a waiver both of the right to review by the district court, *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 605 (1st Cir.1980), and the right to appeal the district court's decision, *United States v. Valencia–Copete*, 792 F.2d 4, 6 (1st Cir.1986) (per curiam).

August 21, 1997.